1

2

3

4

5

6

7

8                               **UNITED STATES DISTRICT COURT**

9                              **CENTRAL DISTRICT OF CALIFORNIA**

10                                   **EASTERN DIVISION**

11

12 JAMES G. W.,                         )    No. ED CV 19-1580-PLA
                                      )

13                 Plaintiff,         )    **MEMORANDUM OPINION AND ORDER**
                                      )

14           v.                   )
                                      )

15 ANDREW M. SAUL, COMMISSIONER )
OF SOCIAL SECURITY            )

16 ADMINISTRATION,             )
                                      )

17               Defendant.       )
                                      )

18 _____)

19                                     **I.**

20                              **PROCEEDINGS**

21       James G. W.[1] ("plaintiff") filed this action on August 22, 2019, seeking review of the

22 Commissioner's denial of his application for a period of disability and Disability Insurance Benefits

23 ("DIB").  The parties filed Consents to proceed before a Magistrate Judge on October 4, 2019, and

24 October 5, 2019.  Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively

25 "JS") on April 16, 2020, that addresses their positions concerning the disputed issues in the case.

26 _____

27       [1]    In the interest of protecting plaintiff's privacy, this Memorandum Opinion and Order uses
plaintiff's (1) first name and middle and last initials, and (2) year of birth in lieu of a complete birth

28 date.  See Fed. R. Civ. P. 5.2(c)(2)(B), Local Rule 5.2-1.

1    The Court has taken the Joint Submission under submission without oral argument.

2

3                                                   **II.**

4                                          **BACKGROUND**

5           Plaintiff was born in 1959.  [Administrative Record ("AR") at 200.]  He has past relevant

6    work experience as a senior information technology systems analyst supervisor, and as a

7    computer laboratory technician.  [Id. at 25, 66, 85-86.]

8           On July 27, 2015, plaintiff filed an application for a period of disability and DIB alleging that

9    he has been unable to work since April 15, 2013.  [Id. at 10; see also id. at 200-01.]  After his

10   application was denied initially and upon reconsideration, plaintiff timely filed a request for a

11   hearing before an Administrative Law Judge ("ALJ").  [Id. at 136-37.]  A hearing was held on July

12   27, 2018, at which time plaintiff appeared represented by an attorney, and testified on his own

13   behalf.  [Id. at 43-94.]  A vocational expert ("VE") also testified.  [Id. at 66, 85-92.]  On September

14   19, 2018, the ALJ issued a decision concluding that plaintiff was not under a disability from April

15   15, 2013, the alleged onset date, through September 19, 2018, the date of the decision.  [Id. at

16   10-25.]  Plaintiff requested review of the ALJ's decision by the Appeals Council.  [Id. at 198-99.]

17   When the Appeals Council denied plaintiff's request for review on July 3, 2019 [id. at 1-5], the

18   ALJ's decision became the final decision of the Commissioner.  See Sam v. Astrue, 550 F.3d 808,

19   810 (9th Cir. 2008) (per curiam) (citations omitted).  This action followed.

20

21                                                  **III.**

22                                   **STANDARD OF REVIEW**

23          Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's

24   decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial

25   evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622

26   F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

27          "Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means -- and means

28   only -- 'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'"   Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017).   "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  Revels, 874 F.3d at 654 (internal quotation marks and citation omitted).   However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence."  Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)).   The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed.  626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

## A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Lounsbury, 468 F.3d at 1114.  If the claimant is not currently engaged in substantial gainful activity, the

second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform past relevant work.  Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).  If the claimant meets this burden, a prima facie case of disability is established.  Id.  The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2.  Lounsburry, 468 F.3d at 1114.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since April 15, 2013, the alleged onset date.[2]  [AR at 12.]  At step two, the ALJ concluded that plaintiff has the severe impairments of chronic lung disease status-post coccidioidal infection[3]; reactive

---

[2]    The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2019.  [AR at 12.]

[3]    Coccidioides are fungi that cause valley fever.  [JS at 10.]

4

1  airway disease; and status-post left wrist fracture.  [Id.]  The ALJ found plaintiff's hypertension,

2  gastroesophageal reflux disease, sleep apnea, rhinitis, right shoulder impingement syndrome

3  status-post rotator cuff repair, and lumbar sprain, to be non-severe as they are "controlled with

4  medication, have only mild symptoms, and/or resolved with treatment." [Id. at 13.]  At step three,

5  the ALJ determined that plaintiff does not have an impairment or a combination of impairments

6  that meets or medically equals any of the impairments in the Listing.  [Id. at 14.]  The ALJ further

7  found that plaintiff retained the residual functional capacity ("RFC")[4] to perform medium work as

8  defined in 20 C.F.R. § 404.1567(c),[5] as follows:

> [H]e can push or pull frequently with the left upper extremity within the lifting and
> carrying restrictions of medium work.  He can frequently reach overhead and in
> other directions with his left upper extremity.  He has no limitaiton to reaching with
> his right upper extremity. [He] can climb ramps, stairs, ladders, ropes, and scaffolds
> frequently.  He can frequently balance, stoop, kneel, crouch, and crawl.  [He] should
> never work in concentrated exposure to humidity and wetness; dusts, odors, fumes,
> or pulmonary irritants; or extreme heat or cold.

13  [Id. at 15.]  At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded

14  that plaintiff is able to perform his past relevant work as a senior information technology systems

15  analyst supervisor as generally performed, and as a computer laboratory technician as generally

16  and actually performed.  [Id. at 24, 25, 87-89.]  Accordingly, the ALJ determined that plaintiff was

17  not disabled at any time from the alleged onset date of April 15, 2013, through September 19,

18  2018, the date of the decision.  [Id. at 25.]

19  /

20  /

21  /

22  /

23

24  [4]   RFC is what a claimant can still do despite existing exertional and nonexertional
limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps
25  three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which
the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149,
26  1151 n.2 (9th Cir. 2007) (citation omitted).

27  [5]   "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or
carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that
28  he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(c).

V.

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when she:  (1) considered the relevant medical evidence of record in assessing plaintiff's RFC; and (2) rejected plaintiff's subjective symptom testimony.  [JS at 4.]  As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

**A.    LEGAL STANDARD**

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  Soc. Sec. Ruling ("SSR")[6] 96-9p, 1996 WL 374184, at *1 (1996).  It reflects the most a claimant can do despite his limitations.  See Smolen v. Chater, 80 F.3d 1273, 1291 (9th Cir. 1996).  An RFC must include an individual's functional limitations or restrictions as a result of all of his impairments -- even those that are not severe (see 20 C.F.R. § 404.1545(a)(1)-(2), (e)) -- and must assess his "work-related abilities on a function-by-function basis."  SSR 96-9p, 1996 WL 374184, at *1; see also Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective").  An ALJ errs when she provides an incomplete RFC ignoring "significant and probative evidence."  Hill v. Astrue, 698 F.3d 1153, 1161-62 (9th Cir. 2012) (further noting that the error is not harmless when an ALJ fails to discuss significant and probative evidence favorable to a claimant's position because when the RFC is incomplete, the hypothetical question presented to the VE is incomplete and, therefore, the ALJ's reliance on the VE's answers is improper)).  An RFC assessment is ultimately an administrative finding reserved to the Commissioner.  20 C.F.R. § 404.1527(d)(2).  However, an RFC determination must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and

---

[6]    "SSRs do not have the force of law.  However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations."  Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

1  opinions of medical sources, such as treating and examining physicians. Id. § 404.1545.  A district

2  court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard

3  and substantial evidence in the record as a whole supports the decision.  See Bayliss v. Barnhart,

4  427 F.3d 1211, 1217 (9th Cir. 2005); Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

5

6  **B.**    **THE PARTIES' CONTENTIONS**

7        Plaintiff argues that because of his physical impairments he "is not now nor at any relevant

8  time since his alleged onset date been capable of performing and persisting" at full-time medium

9  work activity.  [JS at 5.]  He also contends that he is not capable of performing and persisting at

10  his past relevant work activity, which is skilled with a specific vocational preparation ("SVP") rating

11  of 7, because plaintiff's "mental impairments and cognitive limitations would preclude him from

12  performing and persisting at such highly skilled work activity at all times relevant herein."  [JS at

13  5.]

14        Specifically, plaintiff contends that the record reflects that as early as 2009 he was

15  complaining of low back pain; as early as May 24, 2011, he was complaining of anxiety; on

16  October 7, 2011, he complained of shortness of breath; and on January 30, 2012, he reported

17  ongoing fatigue.  [Id. at 5-6 (citing AR at 508, 518, 528, 541).]  On February 16, 2012, he had a

18  positive coccidioidal serology test.  [Id. at 6 (citing AR at 518).]  He also notes the following

19  treatment records:  (1) on April 9, 2012, he continued to complain of fatigue, depression, and

20  insomnia [id. (citing AR at 546)]; (2) on May 15, 2012, he reported he was tired all of the time and

21  dozing off two to three times per day [id. (citing AR at 309)]; (3) also in May 2012 he was found

22  to have mild obstructive sleep apnea [id. (citing AR at 315)]; (4) on July 20, 2012, he reported

23  anxiety and depression [id. (citing AR at 549)]; (5) on July 30, 2012, he was noted to have a work

24  injury date of February 1, 2011, and he was diagnosed with valley fever, asthmatic bronchitis,

25  restrictive lung disease, history of restless leg syndrome, and history of obstructive sleep apnea;

26  and (6) on March 1, 2013, he reported right shoulder pain extending to his right elbow [id. (citing

27  AR at 299, 303-04, 421)].  Plaintiff summarized a number of other relevant physical and mental

28  health records reflecting fatigue, stress, anxiety, chronic cough, difficulties with concentration,

decreased memory; physical therapy for his low back pain; pain, decreased range of motion and tenderness in his right shoulder; positive Hawkins and Neers tests in his right shoulder (indicative of right shoulder impingement); continued right shoulder pain and elbow pain and he received a steroid injection in his right shoulder on August 31, 2015; continued right shoulder pain despite the injection; positive right shoulder impingement again noted on September 14, 2015; right shoulder arthroscopic surgery on October 22, 2015; and another right shoulder steroid injection on March 7, 2016 -- post-surgery.  [Id. at 6-7 (citations omitted).]

Plaintiff submits that the ALJ failed to properly consider the severity of his right shoulder impairment -- for which he received at least two steroid injections and surgery for an impingement and tear of the labrum -- on his ability to perform and persist at medium work activity, "which contemplates the ability to lift up to 50 pounds over 2 hours out of the work day and 25 pounds nearly 6 hours out of the work day." [Id. (citing AR at 599, 621, 668-69, 681, 692, 718, 822), 8.]

Plaintiff also contends the ALJ did not properly consider the effect of plaintiff's anxiety, depression, insomnia, fatigue, and pain on his ability to perform and persist at his past relevant occupations; the November 25, 2015, report of the psychiatric consultative examiner who assessed plaintiff with a cognitive disorder and stated that he would anticipate plaintiff would have mild difficulties with detailed tasks; or the March 14, 2016, report of a state agency psychiatric consultant, David Rovno, M.D., who found plaintiff moderately limited in his ability to understand and remember detailed instructions, limited to performing 1-2 step tasks, and moderately limited in his ability to interact appropriately with the general public.  [Id. at 8 (citing AR at 118-19).] Plaintiff observes that the ALJ only "briefly" discussed Dr. Rovno's opinion regarding plaintiff's ability to perform 1-2 step tasks, and that he should have limited public contact.  [Id. at 9.]  He notes that the ALJ "simply" stated that "[t]his portion of [Dr. Rovno's] opinion gives maximal consideration to [plaintiff's] allegation of memory issues and social isolation; however, in light of the grossly normal mental status examinations and [plaintiff's] activities, such limitations are not warranted." [Id. (citing AR at 19-20).]   Finally, plaintiff notes the following:  in February 2017 he was diagnosed with asthma and bronchitis; in August 2017 he was noted to be experiencing coughing and wheezing; and on June 18, 2018, it was noted that he was undergoing

1  psychotherapy for depression and anxiety.  [Id. at 7-8 (citations omitted).]

2      Plaintiff submits that none of his activities of daily living is inconsistent with the limitations

3  suggested by Dr. Rovno with respect to plaintiff's "significant limitations on his ability to persist at

4  complex and detailed tasks such as were required by his past relevant work."  [Id.]  He concludes

5  that his inability to perform complex occupations such as his past relevant work is also supported

6  by his consistent complaints of anxiety, depression, fatigue, insomnia, decreased concentration

7  and memory, and pain and, therefore, the ALJ's conclusions are not supported by or consistent

8  with the totality of evidence in the record, including the opinions of defendant's own examiners.

9  [Id.]

10      With respect to plaintiff's physical impairments, defendant responds that the ALJ "properly

11  pointed to substantial evidence in the record to support her RFC finding."  [Id. at 10 (citations

12  omitted).]  He notes that the ALJ acknowledged plaintiff's chronic lung disease "warranting some

13  functional limitations," but also noted that the only bronchoscopy in the record was grossly normal;

14  by June 2013 serology testing was negative for coccidioides ("fungus that causes valley fever");

15  unremarkable chest x-rays with no evidence of acute pulmonary process; a "largely normal" recent

16  spirometry; oxygen saturation regularly over 96 percent; "largely normal" physical examination

17  findings; and "normal neurological findings."  [Id. (citations omitted).]  The ALJ also considered

18  limitations due to plaintiff's left wrist fracture, but noted that plaintiff was able to "generate 100

19  pounds of force with his left hand," and had grossly normal range of motion and strength in his

20  upper extremities.  [Id. at 11 (citing AR at 19, 459-61, 815).]  Additionally, the ALJ "reasonably

21  found" that plaintiff's right shoulder pain "appeared to have resolved" after his 2015 surgery, as

22  plaintiff related few complaints; treatment notes indicated his wounds were healed; he could flex

23  and extend his elbow/wrist and fingers; and he had good strength.  [Id. (citing AR at 13, 715-20,

24  799-804, 821-27).]  Notwithstanding plaintiff's March 2016 steroid injection, "his treatment provider

25  nonetheless noted that [plaintiff] could engage in activity as tolerated and recommended

26  '[a]ggressive stretching.'"  [Id. (citing AR at 799, 821).]  And, as defendant and the ALJ both

27  noted, plaintiff reported the ability to exercise moderately to strenuously up to 7 hours a week.  [Id.

28  (citing AR at 13, 603, 697, 798, 882, 921, 950, 983).]  Defendant further notes that the ALJ relied

on the opinions of the State agency physicians, and the internal consultative examiner Azizollah Karamlou, M.D., who determined that plaintiff could perform medium exertion work with certain manipulative, postural, and environmental limitations, finding their opinions were consistent with and supported by the record.  He notes that Dr. Karamlou, who examined plaintiff shortly after his shoulder surgery, found normal range of motion in both shoulders and in the back with no evidence of muscle spasm, tenderness, joint deformities, effusion, crepitus, or pain on motion. [Id. (citing AR at 460).]  Defendant points out that the ALJ also observed that plaintiff's worker's compensation physician Gary Zagelbaum, M.D., opined in July 2013 that plaintiff could continue in his usual and customary job activities, although it would be prudent to avoid exposure to pulmonary irritants. [Id. at 12 (citing AR at 22-23, 460, 1038).]  Defendant states that plaintiff does not challenge the ALJ's reliance on these medical opinions in forming her RFC finding, and points to no physician opinion "that includes greater limitations than those assessed" by the ALJ.  [Id. (citation omitted).]  Additionally, several of the limitations plaintiff "points to in the record reflect his subjective self-reports of symptoms, which the ALJ did not find fully consistent with the record." [Id. at 13 (citation omitted).]

With respect to plaintiff's mental health impairments, defendant notes that the ALJ found these impairments to be not severe, based on the opinions from the state mental health consultants, the psychological consultative examiner, and several worker's compensation physicians.  [Id. (citing AR at 13-14, 19-21, 101-02, 114-15, 118-19, 355-56, 365-66, 450-55).] He notes again that plaintiff does not dispute the ALJ's reliance on these opinions, but "argues that the ALJ erred in finding his mental impairments were not severe, as Dr. Rovno found he would be limited to one-to-two step tasks" and, therefore, he would not be able to perform his past relevant complex work.  [Id.]  Defendant disputes plaintiff's "characterization that Dr. Rovno found [plaintiff] was *limited* to one-to-two step tasks," as "this does not mean this was the *most* Plaintiff could do," especially as Dr. Rovno "noted Plaintiff's minimal treatment history, benign mental status examination findings, and 'well retained functional ability,' all of which suggest greater functional capacity."  [Id. at 13-14 (citing AR at 115).]  Defendant also argues that the ALJ provided valid reasons for rejecting Dr. Rovno's limitations, as his opinion was "inconsistent with the largely

normal mental status examinations"; both worker's compensation physicians found plaintiff "would not be disabled at any point based on mental impairments"; and Dr. Rovno's opinion appeared internally inconsistent as he found plaintiff's mental impairments were not severe and assessed only mild limitations in the four areas of mental functioning, but "also [found] that Plaintiff would have additional mental limitations."  [Id. at 14 (citing AR at 101-02, 113, 114-15, 118-19).]

Defendant also suggests that Dr. Rovno's opinion was not supported by plaintiff's daily activities, which included the fact that plaintiff "was independent in his daily activities, spent 15 to 20 hours a week doing church work,[7] watched television, read, completed household chores, paid bills, did laundry, shopped, played golf, worked on cars, prepared meals, worked in his garden, coached a softball team, communicated with his girlfriend in Asia over the internet, and eventually traveled to Cambodia to meet and marry his girlfriend."  [Id. at 14-15 (citing AR at 77-78, 327-28, 362-63, 451-52).]  Defendant concludes that even if there was error, that error would be harmless because even after finding plaintiff's mental impairments to be non-severe, the ALJ assessed plaintiff's RFC "in combination [with] all of the functional limitations established by the reliable evidence, not just the impairments identified as severe."  [Id. at 15 (citing AR at 13, 15-24).]

## C.   ANALYSIS

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation."  20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations).  Reports

---

7    Defendant neglects to mention that after plaintiff moved to southern California in October 2014, the number of hours he spent doing church work (which mainly consisted of meetings with other parishioners), was reduced to about three per week.  [See, e.g., AR at 16.]

of non-examining medical experts "may serve as substantial evidence when they are supported

by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035,

1041 (9th Cir. 1995).

Here, the ALJ gave the March 14, 2016, opinion of non-examining physician Dr. Rovno

"great weight," as follows:

> [Dr. Rovno's] opinions are supported by the grossly normal mental status examinations in the record.  Further, the opined limitations are consistent with [plaintiff's] reported activities, including his ability to attend to household chores, golf, maintain an active-church life, exercise, and coach softball.  Additionally, . . . Dr. Rovno is a licensed psychiatrist . . . [with] extensive experience in the evaluation and treatment of persons with mental impairments.  Moreover, as [a] State agency consultant[] . . . Dr. Rovno [is] familiar with the rules, procedures, and evidentiary standards of the Social Security Administration.  Because [his] opinions are well supported by the record and consistent with [plaintiff's] activities and because of [his] expertise, the opinions of . . . Dr. Rovno are given great weight.  However, Dr. Rovno additionally opined that [plaintiff] was at least capable of performing one- or two-step tasks and sustaining attention and concentration for such tasks.  He further opined that [plaintiff] could adapt to changes in the workplace and interact appropriately with co-workers, but should have limited public contact.  This portion of his opinion gives maximal consideration to [plaintiff's] allegations of memory issues and social isolation; however, in light of the grossly normal mental status examinations and [plaintiff's] activities, such limitations are not warranted.

[AR at 19-20.]

After reviewing the record and the arguments of the parties, the Court finds that the ALJ

failed to provide specific and legitimate reasons supported by substantial evidence for discounting

the opinions of Dr. Rovno regarding plaintiff's limitation to simple repetitive and/or 1-2 step tasks,

and limited public contact.

First, Dr. Rovno on reconsideration was asked to reconsider the *previous* finding at the

initial level of review that plaintiff had the maximum residual functional capacity for simple

repetitive tasks.  [AR at 113; see also id. at 100.]  The January 16, 2016, finding on initial review

that plaintiff was limited to simple repetitive tasks appears to have been based at least in part on

a November 25, 2015, medical source statement (to which the ALJ gave "great weight" [id. at 20])

that found, based on psychometric testing, plaintiff's test results were "in the impaired range for

tasks requiring sustained attention and visual-tracking ability"; he presented "with a personal

weakness in his working memory ability as compared to other areas of functioning"; and his

1    general memory "is in the mildly delayed to low average range." [Id. at 100; see also id. at 20-21,

2    453.]  At the reconsideration level, Dr. Rovno was given the following instruction:

3          At the initial level the claimant was issued an MRFC [mental residual functional
           capacity] for SRT [simple repetitive tasks].  At the recon level new evidence was
4          requested but no evidence came in to support a change in prior decision.  Please
           affirm MRFC for SRT.
5

6    [Id.]  Dr. Rovno replied:  "MER [medical evidence of record] reviewed.  Affirm initial PRTF

7    [psychiatric review technique findings]/MRFC as written."  [Id.]

8          Based on his record review and the November 2015 psychometric test results, Dr. Rovno

9    specifically noted that plaintiff has "understanding and memory limitations," is not significantly

10   limited in his ability to understand, remember, and carry out very short and simple instructions, is

11   moderately limited in his ability to understand, remember, and carry out detailed instructions, "is

12   able to perform 1-2 step tasks," and is not significantly limited in his ability to maintain attention

13   and concentration for extended periods (presumably so long as limited for 1-2 step tasks).  [Id. at

14   118.]  Thus, contrary to the ALJ's reason for discounting Dr. Rovno's opinion because it was

15   based on plaintiff's subjective allegations, there was objective supporting evidence in the record

16   upon which Dr. Rovno specifically relied in making his assessment.

17         Second, defendant and the ALJ attempt to twist Dr. Rovno's statement that plaintiff "is able

18   to sustain concentration and persistence for 1-2 step tasks," by suggesting that this statement

19   "does not mean this was the *most* Plaintiff could do." [JS at 13 (emphasis in original); AR at 20

20   (stating that Dr. Rovno "opined that [plaintiff] was *at least* capable of performing one- or two-step

21   tasks") (emphasis added).]  Indeed, Dr. Rovno made this finding with respect to his assessment

22   of plaintiff's mental residual functional capacity [see AR at 118], which by definition reflects the

23   *most* a claimant can do despite his limitations.  Smolen, 80 F.3d at 1291.  Thus, this strained

24   interpretation is not supported by the very purpose for which the statement was made, or by its

25   terms, which asked Dr. Rovno to "[e]xplain in narrative form [plaintiff's] sustained concentration

26   and persistence *capacities* and/or *limitations*," with respect to his finding that plaintiff was

27   moderately limited in his ability to understand and remember detailed instructions, not to explain

28   the *least* that plaintiff was able to do.  [Id. at 118.]  Additionally, as previously noted, this limitation

1  was supported by the results of the November 15, 2015, psychometric testing reviewed by Dr.

2  Rovno.

3       Third, defendant's suggestion that the ALJ properly rejected Dr. Rovno's opinion as

4  internally inconsistent with plaintiff's "largely normal mental status examinations," and with the

5  opinions of plaintiff's worker's compensation physicians who found plaintiff would not be disabled

6  based on mental impairments, is not persuasive.  Dr. Rovno gave consideration to the purportedly

7  "largely normal mental status examinations" in finding that plaintiff had only mild limitations with

8  respect to the paragraph B criteria of the Listings (restriction of activities of daily living, difficulties

9  in maintaining social functioning, and difficulties in maintaining concentration, persistence or pace)

10  -- criteria that are used to determine whether an impairment is severe at step two.  [Id. at 114-15.]

11  In contrast, in assessing plaintiff's mental residual functional capacity, Dr. Rovno also considered

12  the results of formal psychiatric testing in determining that plaintiff's non-severe mental

13  impairments nevertheless resulted in a limitation to performing 1-2 step tasks.  And, in their

14  reports, plaintiff's worker's compensation physicians did not find that plaintiff "would not be

15  disabled at any point based on mental impairments" as suggested by defendant; instead, those

16  physicians were primarily explaining that plaintiff's mental impairments were not attributable to

17  work-related factors or did not warrant a period of temporary psychiatric disability.  [See id. at 356

18  (noting that plaintiff "may well have some cognitive inefficiency related to his anxiety and

19  depression; however, this does not meet the threshold of industrial causation," and absent an

20  industrial-caused neuropsychological injury, "there is no neuropsychological disability on an

21  industrial basis"), 366-67 (plaintiff's "predominant cause of his depression remains industrial . . .

22  [but] does not warrant any periods [of] temporary psychiatric disability").]

23       Finally, with respect to plaintiff's daily activities (such as attending to household chores,

24  maintaining an active church life for 2-3 hours per week, exercising, and coaching softball), none

25  reflects an ability to perform medium-level work five days a week, eight hours a day.  Popa v.

26  Berryhill, 872 F.3d 901, 906 (9th Cir. 2017) (plaintiff's "considerable activities of daily living" were

27  not consistent with regularly attending a full-time job and not a valid reason to reject the treating

28  psychologist's opinion).  Both defendant and the ALJ make much of the fact that plaintiff admitted

to his physicians on several occasions that he was able to perform "moderate to strenuous" exercise for 420 minutes per week -- or roughly one hour per day.  What they both ignored is that the medical form reflecting plaintiff's estimates regarding the amount of time he spends exercising, states that "like a brisk walk" is an example of "moderate to strenuous" exercise."  [See, e.g., id. at 603.]   Indeed, there is no evidence that plaintiff was doing anything more strenuous than walking briskly every day, e.g., performing exercises that required heavy lifting, or strenuous or repetitive motion involving his left wrist, right shoulder, or lower back, or that he was participating in his other daily activities on any sort of regular basis for lengthy periods of time.  Even with respect to his exercise, plaintiff reported performing varying amounts of such exercise, ranging between two and seven hours per week, at different visits over time.  [See, e.g., id. at 603 (2 hours per week), 697 (5 hours per week), 798 (7 hours per week), 983 (3 hours per week).]  In any event, the ALJ does not explain how plaintiff's daily activities, or the level at which plaintiff describes performing them, including his exercise program, provide a valid reason to discount Dr. Rovno's opinions that plaintiff is limited to 1-2 step tasks (and able to sustain attention and concentration for such tasks), and should have limited public contact.[8]  See Popa, 872 F.3d at 906 (finding the ALJ erred when he failed to explain why the claimant's daily activities of attending church, watching television, and shopping for groceries were inconsistent with the doctor's opinion).

Based on the foregoing, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for discounting Dr. Rovno's opinions regarding plaintiff's limitation to 1-2 step tasks and limited public contact.  Remand is warranted on this issue.[9]

---

[8]     Moreover, after initially stating that the limitations found by Dr. Rovno "are consistent with [plaintiff's] reported activities, including his ability to attend to household chores, golf, maintain an active-church life, exercise, and coach softball" [AR at 19], the ALJ then found -- inconsistently and without explanation -- that Dr. Rovno's rejected opinions relating to limitations to 1-2 step tasks and limited public contact are inconsistent with his daily activities of attending to household chores, golfing, maintaining an active church life, exercising, and coaching softball.  [Id. at 20.]

[9]     Because the Court finds that remand is warranted on this issue, and the ALJ on remand will necessarily have to reconsider the medical evidence relating to plaintiff's physical and mental
(continued...)

1

2                                                **VI.**

3                        **REMAND FOR FURTHER PROCEEDINGS**

4          The Court has discretion to remand or reverse and award benefits.  <u>Trevizo v. Berryhill</u>, 871

5    F.3d 664, 682 (9th Cir. 2017) (citation omitted).  Where no useful purpose would be served by

6    further proceedings, or where the record has been fully developed, it is appropriate to exercise this

7    discretion to direct an immediate award of benefits.  <u>Id.</u> (citing <u>Garrison</u>, 759 F.3d at 1019).  Where

8    there are outstanding issues that must be resolved before a determination can be made, and it

9    is not clear from the record that the ALJ would be required to find plaintiff disabled if all the

10   evidence were properly evaluated, remand is appropriate.  <u>See</u> <u>Garrison</u>, 759 F.3d at 1021.

11         In this case, there are outstanding issues that must be resolved before a final determination

12   can be made.  In an effort to expedite these proceedings and to avoid any confusion or

13   misunderstanding as to what the Court intends, the Court will set forth the scope of the remand

14   proceedings.  First, because the ALJ failed to provide specific and legitimate reasons for

15   discounting the opinions of Dr. Rovno, the ALJ on remand shall reassess the medical opinions of

16   record relating to plaintiff's physical and mental impairments, including the opinions of Dr. Rovno.

17   The ALJ must explain the weight afforded to each opinion and provide legally adequate reasons

18   for any portion of an opinion that the ALJ discounts or rejects.  Second, the ALJ on remand, in

19   accordance with SSR 16-3p,  shall reassess plaintiff's subjective allegations and either credit his

20   testimony as true, or provide specific, clear and convincing reasons, supported by substantial

21   evidence in the case record, for discounting or rejecting any testimony.

22   /

23   /

24

25

26   _____

27        [9](...continued)
     impairments, as well as his subjective symptom testimony, the Court will not discuss plaintiff's
28   other issues herein.

**VII.**

**CONCLUSION**

 **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

 **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

 **This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  April 29, 2020

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE